## No. 6552.

### SARAH A. BLAKE VS. S. O. & T. A. NELSON ET AL.

29    245
123     6

'Where a wife, separate in property, seeks to annul her transfer of paraphernal property to her creditors, made according to the forms of law, on the ground that the consideration of her transfer was the debts of her husband, the burden of proof is on her, to show in the most positive manner, the truth of what she alleges.

Authentic acts, passed by a plaintiff or defendant, which recognize, or affirm a previous act passed by the same party, are admissible in evidence against him.

Any competent judge, other than the judge of her residence may authorize a wife, in the absence of her husband, who has no domicile in the State, to form a contract, or institute a suit.

The action to annul a contract on account of lesion, is prescribed in four years.

Before a party can annul his contract, he must restore what he has received under the contract, and place the other parties in interest in the position they occupied previous to the contract.

APPEAL from the Thirteenth Judicial District Court, parish of Madison. *Hough, J.*

*Montgomery & Deleney*, for plaintiff and appellee.

*James T. Coleman* and *G. L. Hall*, for defendants.

The opinion of the court was delivered by

MARR, J. In January, 1867, a petition was presented to the Fourth District Court of New Orleans in the name of Mrs. Sarah A. Blake, signed by Hynes & Gordon as her attorneys, stating substantially:

That petitioner was the wife of Conway R. Nutt, residing in Madison parish, separate in property from her husband; that she was largely indebted to certain parties in New Orleans, with whom she had an opportunity to make a settlement on favorable terms; that her husband was absent, and had been absent from the State several years, and that his residence was unknown to her, so that she could not obtain his authorization. The prayer was that she be authorized by the judge to make and sign such act of sale as might be requisite for the purpose stated, and the authorization was granted as prayed for.

On the fifteenth of January Mrs. Blake, by authentic act, passed before Cuvellier, notary, in which this authorization is set forth, conveyed

246          SUPREME COURT OF LOUISIANA,

Mrs. Sarah A. Blake vs. S. O. & T. A. Nelson.

to Andrew R. Hynes, agent for the creditors named and designated, the Ditchley plantation, situated in Madison parish, her paraphernal property, with the exception of two hundred acres, including the dwelling, which she reserved to herself, "free from the incumbrance of the parties for whose benefit this sale is made," the purpose being, as declared, "the payment, by preference over all other debts and liabilities, of the debts specified, due to a number of creditors, including fifteen hundred dollars for attorney's fees, the whole aggregating $37,941 58.

It was stipulated that Hynes should sell the property whenever he should be required to do so by the creditors represented by him, and apply the proceeds according to the terms of the act, and on the fifth of August, 1867, he did sell it to Henry Harvey for ten thousand dollars cash.

The certificate of the recorder, incorporated in the act of the fifteenth of January, shows that there were but two incumbrances on the property:

First—A special mortgage in favor of Rotchford, Brown & Co., dated eleventh of March, 1858, to secure a note for $6180 10, bearing interest at eight per cent, due in November, 1859.

Second—A special mortgage in favor of S. O. Nelson & Co., dated fourth of September, 1858, to secure advances for the purposes of the plantation, to be made in that year or any future year, not exceeding twenty thousand dollars at any one time.

In March, 1873, Mrs. Blake brought this suit against Mrs. Mary Harvey, widow of Henry Harvey, and tutrix of their minor children, and against the several creditors for whom Hynes had been agent and attorney-in-fact, to have the act of the fifteenth of January, 1867, declared to be null and void, and to recover the property conveyed by her to Hynes, and rent from the date of that act.

The grounds set up in the petition are substantially:

First—That the debts mentioned in the act of January 15, 1867, were contracted by her husband, and not by her.

Second—That the law prohibits the wife to bind herself or her property for the debts of her husband.

Third—That Hynes was her confidential friend and legal adviser; that he induced her to accompany him to New Orleans for the purpose of settling these debts, representing to her that she was bound for them, and that she was in danger of being sold out of house and home, and that Hynes was in fact the agent and representative of the creditors, and was acting in their interest.

Fourth—That the application to the judge of the Fourth District Court for authorization was without her consent.

Fifth—That the Fourth District Court of New Orleans was without

jurisdiction to grant this authorization, because her domicile was in Madison parish.

Sixth—Lesion beyond moiety.

Defendants excepted on several grounds, one of which is that plaintiff must first offer to restore the purchase money, and put the defendants in their original position before she can carry on this action.

They also pleaded the prescription of one, three, and five years, which we do not find it necessary to pass upon. We incline, however, to the opinion that the prescription of ten years, as established by article 2221 of the Revised Civil Code, is applicable to the causes of nullity alleged, except lesion.

The creditors represented by Hynes disclaimed any interest in the controversy, and Mrs. Harvey took upon herself the burden of the defense. After a general denial, she pleaded specially: That several years before the war plaintiff began business with S. O. Nelson & Co. as her factors and commission merchants; that they made advances of money and supplies for the Ditchley plantation, her separate property; that they kept the account in her name; that she was authorized to borrow money and execute a mortgage in favor of S. O. Nelson & Co. to secure twenty thousand dollars; that after the close of the war, in January, 1866, she was indebted to S. O. Nelson & Co. in account $4128 96, besides supply notes held by the several creditors specified in the act of the fifteenth of January, 1867, the whole aggregating in capital $32,075; that these notes were drawn by and also bore the name of her husband, C. R. Nutt, authorizing her; that in addition to these debts there was a preferred claim on the plantation of over four thousand dollars which had to be immediately arranged; that all of these claims were placed in the hands of Andrew R. Hynes by the holders and owners, with instructions to foreclose the mortgage and recover the debts; that plaintiff, desirous to save a portion of the plantation, with the residence, urged a compromise upon said creditors, and they, unwilling to distress her and deprive her of a home, finally consented, and, to effect this compromise, she filed her petition in the Fourth District Court of New Orleans and obtained the order authorizing her to make the sale of the property.

That Hynes, by instruction of the creditors, offered the property for sale, and gave the utmost publicity to it by advertisements in the papers of New Orleans, Memphis, Louisville, and St. Louis, and finally sold it to Henry Harvey, for ten thousand dollars cash. Defendant alleges that Harvey made this purchase in the utmost good faith; that the price he paid was as much as the property was worth; that the proceeds of the sale were applied to the debts, and the notes and other evidences of debt were surrendered into the hands of plaintiff, and she was thus acquitted of more than thirty-two thousand dollars of her debts secured by

mortgage on the plantation and left in the quiet possession of her residence and two hundred acres of land.

Defendant prays that she be quieted in the title and possession of the property, or in the event that the title be declared invalid, that the ten thousand dollars paid by her husband, and applied to the liquidation of plaintiff's debts, be returned to defendant with interest.

The judgment of the court below, from which Mrs. Harvey appealed, awarded the land to plaintiff, and rejected the demand for rent, and that of Mrs. Harvey for the return of the price.

Plaintiff's counsel took a bill of exceptions to the ruling of the court admitting the deposition of S. O. Nelson. We think the court erred, but it is not necessary to state the objections, because we shall not consider this testimony or allow it to influence our decision.

Defendants offered in evidence a donation made by plaintiff to her children on the nineteenth of March, 1867, of the two hundred acres reserved in the act of the fifteenth of January, 1867, to which plaintiff objected, on the ground that it was *res inter alios*. This act was a recognition and confirmation of the act of fifteenth of January, as we shall see hereafter, and it was properly admitted in evidence.

Plaintiff also objected to the introduction in evidence of the mortgage by plaintiff in favor of Rotchford, Brown & Co., on the same ground, and they objected to the mortgage in favor of S. O. Nelson & Co., on the ground that it had no connection with the debts for which the land was sold. These two mortgages were the only incumbrances mentioned in the act of the fifteenth of January, 1867, as recorded against this property, and the production of the instruments themselves afforded the best evidence that the property was actually incumbered by them.

Manifestly the burden of proof was on plaintiff to show the nullity of the act by which she conveyed the property in question to Hynes, and it is not enough for her to allege that the debts which she discharged by that act were the debts of the husband. Where community exists the legal presumption is that all debts contracted during the marriage are debts of the community, for which the wife is not liable, but where community does not exist, of course there can be no such presumption.

In this case Mrs. Blake obtained judgment against her husband in 1844, under which she purchased and became the owner of Ditchley plantation, and that judgment separated her in property. Debts contracted by her, with the authorization of her husband, for the plantation, were *prima facie*, at least for debts, and the documentary evidence in the record would suffice to charge her with the liability, if the suit were against her.

In the act of donation to her children, nineteenth March, 1867, which was made with the authorization of the judge of the district court of

Madison parish, Mrs. Blake refers to the act of fifteenth January, passed before Cuvellier, "*under authority of an order* granted in the absence of her husband from the State of Louisiana *by the Fourth District Court of New Orleans.*" She states that by this act she sold or gave in payment to Andrew R. Hynes, "*as attorney-in-fact of certain creditors of appearer, with the reservation to appearer of about two hundred acres,* and the improvements thereon," the Ditchley plantation, etc.; and that by said "act of sale or giving in payment *all the debts of appearer were extinguished,* and the said two hundred acres, more or less, with improvements, *rendered free from all liabilities or incumbrances of appearer.*"

She also states in this act that her husband, "now a resident of the State of Texas," was absent in fact from the State of Louisiana.

The mortgage in favor of Rotchford, Brown & Co. recites that it was executed by plaintiff with the authorization of the judge of her district and of her husband; that the debt was for advances made to her, and was liquidated by her note, countersigned by her husband.

The mortgage in favor of S. O. Nelson & Co. on its face is in strict conformity to the act of 1855, articles 126, 127, 128 of the Revised Civil Code, and the judge who granted the authorization states that he examined Mrs. Blake *under oath*, separate and apart from her husband, touching the object for which she desired to give the mortgage, and ascertained from her declarations, to his satisfaction, that it was not for any debt of her husband.

In an action against the wife, the exhibition of a mortgage, executed by her, with such strict observance of the requirements of the law, would create a presumption of indebtedness against her which it would require the most positive and satisfactory proof to rebut if it would not absolutely conclude her. How much greater the necessity for such proof, on her part, when she sues to annul her solemn acts, and to avoid a compromise by which she and her property were relieved of this apparent indebtedness.

In the act of fifteenth of January Mrs. Blake acknowledged her indebtedness and the incumbrance on her property, and as these two mortgages were the only incumbrances recorded against the property she could have referred to none other. In the act of nineteenth March, 1867, she refers to the act of fifteenth January as the means by which all her debts had been extinguished, and the two hundred acres of land, reserved to herself by that act, rendered free from all liabilities and incumbrances.

So far as the charges against Hynes are concerned, if proven, they ought not to prejudice the rights of the widow and children of Harvey. But we think Mrs. Blake has much less cause of complaint against Hynes than the allegations of her petition indicate. The statement that

the application to the Fourth District Court was without her consent must be attributed to a defective memory. She availed herself of the authorization thus obtained in the solemn notarial act passed the next day, in which it is mentioned and set forth as the evidence of her power and capacity to make that precise contract, the only purpose for which it was intended; and two months after, in another solemn notarial act, she refers to it again with a circumstantiality which precludes the possibility of ignorance, either of the means by which this authorization was obtained, or of the purposes for which it was intended. If she did not specially authorize Hynes & Gordon to make this application, these two acts, the one passed in New Orleans, the other in Madison parish, show beyond her power of denial that she fully understood and approved and ratified what had thus been done in her name and behalf.

In both these acts she states that Hynes was agent and attorney for the creditors whose claims had incumbered the entire plantation, her property. Hynes certainly did not conceal from her his relations to her creditors; and it is not improbable that she obtained better terms from him, her confidential friend, than would have been granted by a stranger, the mere attorney of her creditors. She desired to secure a home; and she accomplished this, after protracted negotiations; and she and her creditors constituted Hynes their trustee to carry into effect the compromise and settlement which they had agreed upon.

Mrs. Blake was examined as a witness in her own behalf, and her testimony proves that Nelson & Co. furnished the supplies for her plantation. She says she and her husband signed these notes during the business with Nelson & Co., and she supposes they were intended for supplies and advances for the plantation. Her repeated acknowledgment of these debts, in public notarial acts, coupled with the fact that they were contracted with the authorization and assistance of her husband, and the sanction of the judge of the district and parish in which she resided, relieves Hynes of the imputation of having taken an unfair advantage of her in representing that she was bound for them. There is no proof in this record which creates a doubt as to the truth of this representation.

As to the jurisdiction of the Fourth District Court, article 132 of the Revised Civil Code empowers " the judge," when he is satisfied that the husband is absent, to authorize the wife to sue or be sued, or to make contracts. This means, not that the judge shall grant a general authorization to the wife, but that when it becomes necessary for her to appear in court to sue or to defend a suit, or to make a contract, the judge may grant the authorization for the special case and purpose.

All the articles of the Code which provide for the judicial authorization of the wife use the term "*the* judge," without other designation or quali-

fication; and counsel assume that this means the judge of the domicile. This assumption will not stand the test of criticism. Article 3556, which is devoted to the explanation of the terms used in the Code, and not therein defined, declares (No. 17) that " the word *judge*, as employed in this Code, means always the competent judge."

There are cases in which the wife must be sued at her domicile or usual place of residence, and there are cases in which the jurisdiction would be vested exclusively in some judge exercising his functions in a parish different from that in which she resides, and in which she would be a necessary party. No judge is specially vested with jurisdiction of suits in which married women are parties. The jurisdiction is established by general laws, applicable to all cases and persons falling within their purview, and they determine the competency of the judge in each particular case.

When a married woman is to be sued, her husband must be sued with her; and if he appears and assists her in the defense, no other authorization is required. Should he be absent, the plaintiff must demand that she be authorized by the judge before whom the suit is brought. R. C. P., art. 118.

The general rule is that every one must be sued before the judge having jurisdiction over the place of his domicile or usual residence; and, in ordinary civil matters, where the wife is to be sued, and her husband is absent, the authorization must be by the judge of the domicile or usual residence. R. C. P., art. 162.

In the cases contemplated by article 163 the suit may be brought, at the option of the plaintiff, either at the domicile of the defendant or in the parish in which the real property, the subject of the litigation, is situated.

There are other cases specified in articles 164 and 165 of the Revised Code of Practice in which suit must be brought without reference to the domicile of defendant. Therefore, when article 132 empowers the judge to authorize suit to be brought against a married woman whose husband is absent, it means the competent judge; that is, the judge before whom the suit is to be brought, as declared by article 118, Revised Code of Practice. It follows that " the judge," or the competent judge, simply means the judge having jurisdiction of the cause.

Article 124, Revised Civil Code, declares that if the husband refuses to empower his wife to appear in court the judge may give such authority. This means the judge of her domicile only in the cases in which she is to appear before him. It necessarily means the judge having jurisdiction of the cause, whether the wife is to appear as plaintiff or as defendant, whether the suit be brought at her domicile or in some other parish, in accordance with the general laws regulating the jurisdiction of the courts.

252       SUPREME COURT OF LOUISIANA,

Mrs. Sarah A. Blake vs. S. O. & T. A. Nelson.

Article 125, Revised Civil Code, which, like article 124, contemplates those cases only in which the husband is not absent, declares, if the husband refuses to authorize his wife to contract, she may cause him to be cited to appear before the judge, who may authorize her to make such contract, or refuse to empower her after the husband has been heard, or has made default. As the husband must be cited before the judge of his domicile, that judge alone would have jurisdiction under this article. This was decided in Fowler vs. Boyd, 12 La. 70; but we can not assent to the doctrine asserted in that case, that the parish judge of the domicile is vested with exclusive jurisdiction.

The act of 1855, Revised Civil Code, articles 126, 127, and 128, requires the wife, when she desires, in addition to the authorization of her husband, to be authorized judicially to contract a debt for her separate benefit, and to secure it by mortgage or other incumbrance on her separate property, to be examined, apart from her husband, by the judge of the district or parish in which she resides, according to the amount of the debt; and, of course, no other judge has jurisdiction in this case. This law relates, exclusively, to those contracts by which the wife becomes a debtor, and binds her separate property as security; and it contemplates not only the presence of the husband, but his authorization.

Article 132 differs from those just cited, in that they provide for cases in which the husband is present, and has the power and capacity to authorize his wife, while article 132 relates, exclusively, to cases in which the husband can not authorize his wife, either because he is absent or under interdiction. It enables the judge, where the husband is either absent or under interdiction, to remove the incapacity of the wife, for the special occasion, just as articles 124 and 125 empower him to do where the husband is present and refuses to authorize her. The judge, who, under article 132, may authorize the wife to sue or be sued, must mean just what the same words imply in article 124, which empowers the judge to authorize her to appear in court; and that is, the judge before whom she is to appear, whether as plaintiff or as defendant, the judge having cognizance of the cause, no matter in what parish he may exercise his functions.

The case is different where the wife is to be empowered to make a contract. When she proceeds, on the refusal of her husband, under article 125, she causes him to be cited. There is a suit, a *contestatio litis;* and the judge of his domicile or usual residence is vested with exclusive jurisdiction. When she proceeds under article 132, her husband being absent, she can not cause him to be cited; there is no suit, no issue made with any one, no *contestatio litis.* Her application is purely *ex parte,* and there is no reason why she should make this application to the judge of

NEW ORLEANS, APRIL, 1877.                253

Mrs. Sarah A. Blake vs. S. O. & T. A. Nelson.

the parish in which she resides, rather than to the judge of the parish in which she finds it convenient to make the contract.

The condition of the married woman who lives apart from her husband is anomalous. The Code, article thirty-nine, declares that: "A married woman has no other domicile than that of her husband," and this is copied from the Code Napoleon, article 108, in which the strong negative, "*n'a point d'autre domicile*," is not more exclusive of the legal possibility of a separate domicile than our English version, "*has no other domicile.*"

A voluntary absence of two years is a forfeiture of domicile within the S ate. R. C. C., article 46. In 1867 the husband of Mrs. Blake had been absent from the State for several years, and he had no longer a domicile in the State. The law does not say a married woman has no other domicile than that of her husband "*so long as he resides or has a domicile in the State*," nor does it mean any such thing. Article 120 says: "The wife is bound to live with her husband, and to follow him wherever he chooses to reside." The plain meaning of the law is that the married woman, by reason of this legal and social obligation, by reason of the disability inseparable from her status and condition, has neither the right nor the capacity to create or establish a domicile for herself, and that she is bound to accept that of her husband; and this incapacity, not being subject by the terms of the law to any exception, or limitation, or restriction, lasts so long as the cause exists, so long as she continues to be a married woman, so long as she remains, in legal contemplation, under the bonds of matrimony, from which nothing but death or divorce can release her.

This rule is laid down clearly in the Roman law—Dig. lib. 50, tit. 1, l. 38, sec. 3—from which it found its way into the systems of continental Europe and into our Code: "Imperatores Antoninus et Verus resei pesenent mulierem, *quamdiu nupta est*, incolam ejusdem civitatis videri, cujus maritus ejus est."

Mrs. Blake *resides* in Louisiana, but that is a mere *fact* to which the law does not attribute domicile as a consequence. She has no domicile in Louisiana, because her husband has none, he having forfeited that which he once had by prolonged absence. While she continues to be a married woman the law deals with her as being *sub potestate mariti* and subjects her to the disabilities and incapacities of her legal status and condition, though she be a wife only in name and in legal contemplation, and may not have seen her husband for years. It would be strange, indeed, if her incapacity to contract should still continue, so that she must be empowered judicially, while she has become *sui juris* with respect to domicile, in spite of the law of public order, the law of public policy, which requires her to live with her husband, and which declares

that she has no other domicile than his. It is true under the French law, true under our law, as it was under the Roman law, *quam diu nupta est*, her husband's domicile is hers, and she can have no other, reside where she may.

Mrs. Blake could not apply to the judge of her husband's domicile for authorization, because he had none in the State; nor could she make the application to the judge of her domicile, for she had none in the State. The law does not say that the power delegated to the judge by article 132 must be exercised by any special or designated judge, and judicial tribunals can not interpolate words which the Legislature has not chosen to use, nor restrict the power to a judge in no way indicated by the law itself.

The power thus vested in the judge is a very delicate one, and it is discretionary. The law does not say he *shall*, it says he *may*, authorize the wife. He should be very careful to see in every case that this power is not abused, that it is not imposed upon; to ascertain the existence of the facts which authorize him to interpose, and to grant the authorization only when he is satisfied that it is necessary for the interest of the wife. We think the power was properly invoked and exercised in this case. Mrs. Blake was in New Orleans, where her creditors resided. After much delay a settlement had been agreed upon which was highly advantageous to her, and there was no occasion for her to go out of the city of New Orleans in order to obtain judicial authorization to pass a contract before a notary in New Orleans to carry that settlement into effect. She was not about to contract any new obligation, but to discharge existing obligations which she had contracted years before, with the authorization of her husband and with proper judicial sanction, and by this means to save from the wreck of her fortune, for herself and her daughters, two of them widows, two of them not married, a home freed from the incumbrance imposed upon her entire property by these obligations.

As to the alleged lesion. If this cause of nullity ever existed, it was barred by the prescription of four years (R. C. C. 1876); but we think it never had any foundation in fact. The testimony shows that Mrs. Blake reserved to herself the most valuable portion of the Ditchley plantation, and that the remainder was well sold for ten thousand dollars cash. But she had nothing to do with this remainder, nor does it concern her whether it was sacrificed or sold for its full value. In consideration of her giving this remainder in payment to her creditors, she was discharged from the debts for which she was bound personally, and for which her property was mortgaged, amounting in capital and interest to over forty thousand dollars, a sum beyond the value of the whole; and two months after this had been accomplished she made a donation to

Mrs. Sarah A. Blake vs. S. O. & T. A. Nelson.

her daughters of the property thus released and saved, which she could not otherwise have done.

It would not be just to allow Mrs. Blake to recover the property without requiring her to return to Mrs. Harvey the ten thousand dollars for which it was sold, and which was applied to the liquidation of her debts. It is true fifteen hundred dollars was retained for attorneys' fees, but this was prejudicial to Mrs. Blake's creditors alone, not to her in any sense. She had the full benefit of the price, in the discharge of her debts, which exceeded it fourfold, and if her creditors had permitted Hynes to retain the whole it would have been their affair, not hers.

Equity would also require that the mortgages and debts acquitted and discharged in consideration of the act of fifteenth January, 1867, should be restored to the condition in which they were on that day, before that contract could be avoided and annulled or otherwise disturbed. By the donation to her children of nineteenth March, 1867, Mrs. Blake has made this *restitutio in integrum* impossible.

We conclude that Mrs. Blake was sufficiently authorized to make the contract of fifteenth January, 1867 ; that there was ample consideration for that contract; that if she could otherwise maintain this action she must first return or offer to return the ten thousand dollars paid by Harvey ; that by her voluntary donation to her daughters of the property freed from incumbrance by that contract, she deliberately ratified and confirmed it, as far as the judicial authorization to make that donation could capacitate her for such a recognition and confirmation; and that she has interposed an effectual barrier, an estoppel, against the relief which she claims, to which we think she is not entitled on any of the grounds alleged in her petition.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and reversed ; and that there be judgment in favor of defendants against the plaintiff, rejecting the demand of plaintiff, with costs in both courts.

Mr. Justice SPENCER, having recused himself, takes no part in this decision.

---

### DISSENTING OPINIONS.

EGAN, J. I can not give my assent to the view expressed in the opinion of the court that a married woman whose husband has once had a domicile in the State, but has abandoned her and left the State, may be authorized to act by any judge of any parish or jurisdiction in the State. The provisions of the law giving power to the judge having jurisdiction of a cause to authorize a married woman to become a party to prosecute

256    SUPREME COURT OF LOUISIANA,

Mrs. Sarah A. Blake vs. S. O. & T. A. Nelson.

or defend and stand in judgment are express, and, *ex necessitate*, as incident to jurisdiction of the cause, and have no application or force in the case at bar.

The incapacity of married women is classed with that of insane persons, interdicts, and minors. C. C. 1782. It is removed by the authorization of the husband, or in cases provided by law by that of *the judge*. C. C. 1786. If the husband refuses, the wife may cause him to be cited to appear before *the judge* (*i. e.*, the judge of the domicile), who may authorize her. C. C. 125. If the husband be under interdiction or absent, *the judge* may authorize her. C. C., article 132. She may borrow money or contract debts with the authorization of her husband and of the "judge of the district or parish in which she resides." C. C. 126, 127.

In these articles the definite article is always used to indicate what judge is meant. It is not *any* judge, but *the judge of the domicile or residence*. Such was the view taken in the case of Fowler vs. Boyd, 12 La. 70. It is immaterial to inquire whether, under existing laws regulating jurisdiction, the judge is, as held by Judge Martin in that case, "the parish judge." It is the judge of the domicile, whether district or parish judge, who is alone empowered or competent to give the authorization. The analogies of the law are all in favor of this view, and so, also, has been the uniform practice and general interpretation. In other States incapable persons are the wards of the law and of the courts of domicile, and we think are not less so here.

It would be a dangerous practice to permit a married woman to be authorized anywhere and by any judge So long as the law requires authorization at all, it should be by the judge who knows her and her circumstances and needs, and the motives which prompt her, and those who deal with her. I can not give my assent to the idea that a married woman who once had a domicile in this State loses it for such purposes, and has none by the mere fact of her husband's abandonment or absence. I do not think article 39 of the Civil Code has the effect argued for, or can be held to apply to, a case like the present. The presumption of the law is that the *last* domicile of the husband in the State continues to be that of the wife, unless she is shown to have changed it after his abandonment of her. In this case the fact accords with the legal presumption. The wife continued to reside at the marriage domicile, where she had also separate paraphernal real estate. The provisions of the law making it the duty of the wife to follow the husband wherever he may choose to reside have no relation to a case of this kind, where the husband has left the State, and the mere authority to contract is in question. But while I can not give my assent to the contrary doctrine, and therefore do not believe the authorization given by the district judge in New Orleans in this case good, I do not consider that question

material to the determination of the case at bar. The plaintiff got the benefit of the price of the land sued for. She has not returned, nor offered to return it, to the purchaser. To enable her to recover without doing so would be to enable her to perpetrate a fraud and an injustice to innocent persons. She can not keep the price and recover the land, whether authorized to alienate it or not. 2 An. 1; 6 An. 56; 10 An. 433.

I therefore concur in the decree.

DEBLANC, J. I concur in the views of Mr. Justice Egan.